## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD MCCLURE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| HSN, INC., COURTNEE CHUN ULRICH, WILLIAM COSTELLO, FIONA P. DIAS, JAMES M. FOLLO, STEPHANIE ANNE KUGELMAN, ARTHUR C. MARTINEZ, THOMAS J. MCINERNEY, MATTHEW E. RUBEL, and ANN M. SARNOFF, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Plaintiff Richard McClure ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of HSN, Inc. ("HSN" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with HSN, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between HSN and affiliates of Liberty Interactive Corporation ("Liberty").

2. On July 5, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to

receive 1.650 shares of Liberty's Series A QVC Group ("QVC") common stock for each share of HSN stock they own (the "Merger Consideration"), representing approximately $2.1 billion in total value.

3.      On August 31, 2017, in order to convince HSN shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Form S-4 Registration/Joint Proxy Statement (the "S-4") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  The materially incomplete and misleading S-4 independently violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the S-4, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the S-4 materially incomplete and misleading.

5.      In particular, the S-4 contains materially incomplete and misleading information concerning the financial projections for the Company and QVC that were both prepared and relied upon by the Board in recommending the Company's shareholders vote in favor of the Proposed Merger.  The financial projections were also utilized by HSN's financial advisors, Centerview Partners LLC ("Centerview") and Goldman Sachs & Co. LLC ("Goldman Sachs"), in conducting the valuation analyses that support their respective fairness opinions.

6.      It is imperative that the material information that has been omitted from the S-4 is disclosed prior to the forthcoming stockholder vote in order to allow the Company's stockholders

to make an informed decision regarding the Proposed Merger.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to HSN shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because HSN is incorporated in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of HSN common stock.

12.     Defendant HSN is incorporated in Delaware and maintains its principal executive

offices at 1 HSN Drive, St. Petersburg, Florida 33729.  The Company's common stock trades on the Nasdaq under the ticker symbol "HSNI."

13.      Individual Defendant Arthur C. Martinez ("Martinez") has served as a director of the Company since 2008.

14.      Individual Defendant Courtnee Chun Ulrich ("Ulrich") has served as a director of the Company since 2013.

15.      Individual Defendant Fiona P. Dias ("Dias") has served as a director of the Company since 2016.

16.      Individual Defendant William Costello ("Costello") has served as a director of the Company since 2008.

17.      Individual Defendant James M. Follo ("Follo") has served as a director of the Company since 2008.

18.      Individual Defendant Stephanie Anne Kugelman ("Kugelman') has served as a director of the Company since 2008.

19.      Individual Defendant Thomas J. McInerney ("McInerney") has served as a director of the Company since 2008.

20.      Individual Defendant Matthew E. Rubel ("Rubel") has served as a director of the Company since 2013.

21.      Individual Defendant Ann M. Sarnoff ("Sarnoff") has served as a director of the Company since 2012.

22.      Defendants Martinez, Ulrich, Dias, Costello, Follo, Kugelman, McInerney, Rubel, and Sarnoff are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of HSN (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

24.     This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable.  As of August 1, 2017, there were approximately 52,387,668 shares of HSN common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of HSN will be ascertained through discovery;

b.      There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)      whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the S-4 in violation of Section 14(a) of the Exchange Act;

iii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv)      whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading S-4.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.    The Proposed Merger

25.      HSN is an interactive multi-channel retailer that operates through two segments: HSN and Cornerstone. The Company markets and sells a range of third-party merchandise directly to consumers through various platforms, including home shopping broadcasts on the HSN

television networks and other direct-response television marketing; catalogs, consisting of the Cornerstone portfolio of print catalogs; websites; mobile devices; retail and outlet stores, and wholesale distribution of certain products to other retailers.[1]

26.     On July 6, 2017, HSN and Liberty issued a joint press release announcing the Proposed Merger, which states in pertinent part:

> ENGLEWOOD, Colo. & ST. PETERSBURG, Fla.- Liberty Interactive Corporation ("Liberty Interactive") (Nasdaq: QVCA, QVCB, LVNTA, LVNTB) and HSN, Inc. ("HSNi") (Nasdaq: HSNI) today announced that they have entered into an agreement whereby Liberty Interactive will acquire the 62% of HSNi it does not already own in an all-stock transaction.

> "We are excited to announce the acquisition of HSNi. The addition of HSN will enhance QVC's position as the leading global video eCommerce retailer. Every year they together produce over 55,000 hours of shoppable video content and have strong positions on multiple linear channels and OTT platforms," said Greg Maffei, Liberty Interactive President and CEO. "The value of the combined QVC, HSNi and zulily will be further highlighted when later this year QVC Group becomes an asset-backed stock as part of the previously announced split-off of Liberty Ventures."

> "We're thrilled to welcome the HSNi team to our company. HSNi founded the industry forty years ago and helped it grow with exciting initiatives like Shop By Remote and media integrations with leading content producers. By creating the leader in discovery-based shopping, we will enhance the customer experience, accelerate innovation, leverage our resources and talents to further strengthen our brands, and redeploy savings for innovation and growth," said Mike George, QVC President and CEO. "As the prominent global video commerce retailer and North America's third largest mobile and eCommerce retailer, the combined company will be well-positioned to help shape the next generation of retailing."

> "Joining the QVC Group will give us instant access to global consumer markets, a leadership team with deep expertise and a global perspective, and the opportunity to further strengthen our content-based brand portfolios in a changing retail landscape," said Arthur C. Martinez, HSNi's Chairman of the Board of Directors. "We have both been innovators in a growing and dynamic retail environment with a unique vision of what shopping should be, and as new technologies continue to

---

[1]     http://www.reuters.com/finance/stocks/company-profile/HSNI.OQ.

change our everyday lives, together we can develop the next generation of shopping for the next generation of consumers."

Liberty Interactive believes the acquisition of HSNi will provide the following benefits:

- Increase scale, enhancing the competitive position of QVC Group
- Meaningful synergies through cost reduction and revenue growth opportunities
- Increased development of eCommerce, mobile and OTT platforms
- Optimize programming across five U.S. networks
- Cross marketing to better engage existing and potential customers
- Financial optionality due to HSNi's lower debt leverage
  HSNi consists of HSN, a leading interactive multichannel retailer, and Cornerstone, which is comprised of leading home and apparel lifestyle brands including Ballard Designs, Frontgate, Garnet Hill, Grandin Road and Improvements. Post-closing, HSNi headquarters will remain in St. Petersburg and will be overseen by Mike George.

Liberty Interactive currently owns 38.2% of HSNi and, under the definitive agreement will acquire the remaining 61.8% stake, making it a wholly-owned subsidiary, attributed to the QVC Group tracking stock. HSNi shareholders will receive fixed consideration of 1.65 shares of Series A QVC Group common stock for every share of HSNi common stock. Based on the Series A QVC Group common stock's closing price as of July 5, 2017 and the number of HSNi undiluted shares outstanding as of May 1, 2017, this equates to a total enterprise value for HSNi of $2.6 billion, an equity value of $2.1 billion, and consideration of $40.36 per HSNi share, representing a premium of $9.06 per share or 29% to HSNi shareholders, based on HSNi's closing price on July 5, 2017.

27.     The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth.   Indeed, the Merger Consideration represents a ***5.6% discount*** to the Company's 52-week high of $42.75 per share.  Moreover, the Company has reported double-growth in its free cash flows since 2015.

28.     Commenting on the Company's future performance in a press release issued on May 3, 2017, HSN's Chief Financial Officer, Rod Little, stated the following: "We continue to focus on stabilization and ultimately growth regeneration in the business. The continued strength of digital sales, and mobile sales in particular, has been very encouraging. Digital sales, which now account for over half of our revenue, continued to grow both in absolute terms and as a proportion

of total revenue.  Mobile, which we see as our flagship, continues to be our fastest growing sales channel and significant source of new customer acquisition …We remain committed to our strategies to improve our performance.  Our key priorities are:  acquiring and retaining customers via a robust and relevant product portfolio, optimizing our digital platforms, and improving our supply chain capabilities and efficiency, all to drive consistent shareholder value creation."

29.     In sum, it appears that HSN is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders.  It is imperative that Defendants disclose the material information they have omitted from the S-4, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II.     The Materially Incomplete and Misleading S-4

30.     On August 31, 2017, Defendants caused the S-4 to be filed with the SEC in connection with the Proposed Merger.  The S-4 solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the S-4 misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *The Financial Projections Prepared by HSN's Management*

31.     The S-4 fails to provide material information concerning the Company's financial projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger.  S-4, 59-61, 64-67.

The S-4 also fails to provide material information concerning QVC's financial projections, both as a standalone entity and on a pro forma basis, which were developed by HSN's management based on the unaudited forecasted financial information provided by Liberty.  S-4, 64, 67-69. These financial projections were also relied upon by the Company's financial advisors, Centerview and Goldman Sachs, in rendering its fairness opinion.  S-4, 71.

**HSN's and QVC's Standalone Financial Projections**

32.     Specifically, the S-4 provides values for non-GAAP (generally accepted accounting principles) financial metrics Adjusted EBITDA, Comparable EBITDA, and unlevered free cash flows ("UFCF"), but fails to provide: (i) the line item projections detailed below for the metrics used to calculate these non-GAAP measures, or (ii) a reconciliation of the non-GAAP projections to the most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

33.     First, for both HSN and QVC, the S-4 defines Adjusted EBITDA as consolidated net earnings before interest, income taxes, stock-based compensation expense and depreciation and amortization expense, yet fails to provide the values of the underlying line items: (i) interest and (ii) income taxes.  S-4, 66-68.  The S-4 also fails to reconcile Adjusted EBITDA to its most comparable GAAP equivalent.

34.     Second, with respect to both HSN and QVC, the S-4 defines Comparable EBITDA as Adjusted EBITDA less stock-based compensation expense.  However, the S-4 fails to provide a reconciliation of non-GAAP metric Adjusted EBITDA to its most comparable GAAP equivalent. S-4, 66-68.

35.     Third, for HSN and QVC, the S-4 defines UFCF as Comparable EBITDA minus unlevered cash taxes, capital expenditures and the increase in net working capital, yet fails to

provide the value of the underlying line item unlevered cash taxes.  S-4, 66-68.  The S-4 also fails to provide a reconciliation of non-GAAP metric UFCF to its most comparable GAAP equivalent.

### QVC Pro Forma Financial Projections

36.     The S-4 also provides financial projections for QVC on a pro forma basis for the merger, prepared by HSN's management, which take into account certain projected operating synergies and the cost to achieve those synergies.

37.     First, the S-4 defines Adjusted EBITDA (Pre-Synergies) as consolidated net earnings before interest, income taxes, stock-based compensation expense and depreciation and amortization expense yet fails to provide the values of the underlying line items: (i) interest and (ii) income taxes.  S-4, 69.  The S-4 also fails to reconcile Adjusted EBITDA (Pre-Synergies) to its most comparable GAAP equivalent.

38.     Second, the S-4 defines Comparable EBITDA (Pre-Synergies) as Adjusted EBITDA less stock-based compensation expense.  However, the S-4 fails to provide a reconciliation of fails to provide a reconciliation of non-GAAP metric Adjusted EBITDA to its most comparable GAAP equivalent.  S-4, 69.

39.     Third, the S-4 defines UFCF as Comparable EBITDA (Pre-Synergies) minus unlevered cash taxes, capital expenditures and the increase in net working capital, yet fails to provide the value of the underlying line item unlevered cash taxes.  S-4, 69.  The S-4 also fails to reconcile UFCF to its most comparable GAAP equivalent.

40.     Further, with respect to both the standalone projections for HSN and QVC as well as the pro forma projections for QVC, the definitions of Adjusted EBITDA and Comparable EBITDA disclosed by HSN make clear that neither Adjusted EBITDA nor Comparable EBITDA includes stock-based compensation expense.  Accordingly, it appears the Company has deducted

stock-based compensation twice.  HSN must clarify whether either metric includes stock-based compensation expense, as the Company's failure to do so renders the S-4 materially incomplete and misleading.

41.     When a company discloses non-GAAP financial measures in a proxy, the company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

42.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as HSN included in the S-4 here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[2]

---

[2]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-*

43.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[3] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[4]   One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

44.     In order to make the projections for HSN and QVC included on pages 66 through 69 of the S-4 materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

45.     At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculated the aforementioned non-GAAP measures.   Such projections are necessary to make the non-GAAP projections included in the S-4 not misleading. Indeed, Defendants caution HSN stockholders regarding the information contained in the financial projections, which incorporate non-GAAP financial metrics. Specifically, with respect to Adjustable EBITDA, the non-GAAP metric upon which the other non-GAAP metrics of

---

*GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[3]      *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[4]      *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

Comparable EBITDA and UFCF are based, the Company stated: "this measure should not be considered as an alternative to net earnings or other measures derived in accordance with GAAP." S-4, 66, 68-69.

46.     Clearly, shareholders would find this information material since the Board's unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in part on the following:

- [T]he current and prospective competitive climate in the retail and e-commerce industry in which [HSN] and Liberty Interactive operate and the belief that the merger would create a leading global video e-commerce retail company with strong, focused businesses and with enhanced scale, optimized programming, and a diversified product mix across segments, geographies and customers resulting in improved opportunities for growth, cost savings and innovation relative to what [HSN] could achieve on a standalone basis; and
- [HSN's] management's expectation that the combined company could achieve at least approximately $100 million in annual operating synergies on a run rate basis.

S-4, 59.

*The Financial Advisors' Valuation Analyses and Fairness Opinions*

47.     Moreover, the financial projections at issue were relied upon by the Company's financial advisors, Centerview and Goldman Sachs, in connection with their valuation analyses and respective fairness opinions.  S-4, 70-91.  The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently.  Once a proxy discloses internal projections relied upon by the board, those projections must be complete and accurate.

**Centerview**

48.     With respect to Centerview's *Discounted Cash Flow Analysis* ("DCF") of HSN, the S-4 states that Centerview utilized the non-GAAP metric unlevered after-tax free cash flows in calculating the implied per share equity value reference range.  S-4, 74-75.  However, the S-4

fails to disclose the value of HSN's unlevered after-tax free cash flows.  Furthermore, the S-4 fails to clarify whether the unlevered after-tax free cash flows are equivalent to the UFCF included in the Company's projections.  The absence of this information renders Centerview's DCF Analysis incomplete and misleading.

**Goldman Sachs**

49.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* ("DCF") of HSN, the S-4 states that Goldman Sachs' calculation incorporates the UFCF reflected in the Company's financial projections.  However, as detailed above, the Company's projected UFCF incorporates the unreconciled non-GAAP metrics of Adjusted EBITDA and Comparable EBITDA.  As a result, Goldman Sachs' reliance on the unreconciled non-GAAP metric UFCF renders its DCF Analysis materially incomplete and misleading.

50.     The aforementioned information is material to HSN shareholders, and its omission renders the summary of the financial advisors' DCF Analyses incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value… The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

51.     In sum, the S-4 independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the S-4 independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the S-4 to garner votes in support of the Proposed Merger from HSN shareholders.

52.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

55.     As set forth above, the S-4 omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

56.     The failure to reconcile the numerous non-GAAP financial measures included in the S-4 violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

59.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*."  17 C.F.R. § 244.100(b).

60.     Defendants have issued the S-4 with the intention of soliciting shareholder support

for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the S-4, which fails to provide critical information regarding, amongst other things, the financial projections for the Company and QVC.

61.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

62.     The Individual Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

63.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

64.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the S-4.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately

involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

65.     HSN is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the S-4.

66.     The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

67.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

68.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

69.     The Individual Defendants acted as controlling persons of HSN within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of HSN, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

70.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly

after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.   They were thus directly involved in preparing the S-4.

72.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

73.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

74.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

75.     Plaintiff and the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.      Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the S-4;

C.      Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  September 7, 2017

**OF COUNSEL:**                                                       Respectfully submitted,

**FARUQI & FARUQI, LLP**                                  **FARUQI & FARUQI, LLP**

Nadeem Faruqi                                                          By: _/s/ Michael Van Gorder_
James M. Wilson, Jr.                                                Michael Van Gorder (#6214)
685 Third Ave., 26th Fl.                                          20 Montchanin Road, Suite 145
New York, NY 10017                                              Wilmington, DE 19807
Tel.: (212) 983-9330                                               Tel.: (302) 482-3182
Email: nfaruqi@faruqilaw.com                             Email: mvangorder@faruqilaw.com

Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

*Counsel for Plaintiff*